UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REGAN C. THOMAS,

    Plaintiff,

v.   Case No.:   2:23-cv-661-SPC-NPM

ROBERT A. FLANNAGAN,
AUSTIN C. BROWN, MICHELLE
BURTON, J. DAWSON, A.
BENNETT, L. HILLS and
RANESE FREAL,

    Defendants.
_____/

## **OPINION AND ORDER**

Before the Court are the defendant's three motions to dismiss (Doc. 29, Doc. 32, and Doc. 42).

## **Background**

Plaintiff Regan Thomas is a prisoner of the Florida Department of Corrections (FDOC), and he sues seven FDOC officials under 42 U.S.C. § 1983 for violating his First, Eighth, and Fourteenth Amendment rights. The defendants move to dismiss some of Thomas's claims under Federal Rule of Civil Procedure 12(b)(6).

The Court recounts the factual background as pled in Thomas's Amended Complaint, which it must take as true to decide whether the

complaint states a plausible claim. See *Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012). Thomas's factual allegations are disorganized and difficult to follow. Specifically, Thomas frequently jumps from moment to moment without explaining what happened between them. The Court has done its best to discern the basis of Thomas's claims without making assumptions to fill in the gaps.

On December 28, 2022, Defendant Robert Flannagan overheard that Thomas accused another officer of sexually harassing him in violation of the Prison Rape Elimination Act (PREA). Thomas claims Flannagan then "caress[ed]" and "squeez[ed]" Thomas's testicles, punched Thomas in the face, and "choke slam[med]" Thomas, injuring his jaw, back, and testicles. (Doc. 9 at 8).

A second incident occurred on June 14, 2023, when Flannagan and other officers conducted a search of Thomas and his cell. Thomas claims Flannagan told him to get naked so Flannagan could see his body. Thomas then had flashbacks to being molested as a child, and he declared a psychological emergency. A mental health counselor came to Thomas's cell to talk with him, and Thomas refused to consent to a strip search.

Later that day—the timing is not clear—Flannagan returned to Thomas's cell with another mental health counselor. The counselor told Thomas she was aware of the trauma from his childhood, but the correctional

officers wanted Thomas to submit to handcuffs and exit the cell. Thomas did not comply, and an officer arrived with a camera to record the incident. Brown threatened to use pepper spray if Thomas did not strip down. Thomas then consented to a search and removed his clothes. When Flannagan told Thomas to bend over and cough, Flannagan again had flashbacks to be being molested as a child. Thomas declared another psychological emergency because "his mind was playing tricks on him." (*Id.* at 11).

Flannagan and other staff searched Thomas's cell, presumably with Thomas confined to the shower. Thomas claims Flannagan leaned into the shower and said, "get down on your knees and suck this dick boy." (*Id.*). In Thomas's words, he then "blacks out and eyes cloud up and he comes out of the shower a little fast." (*Id.*). Thomas was tackled to the floor and restrained with shackles. Bennett laid on Thomas's lower body while Flannagan and Brown punched and kicked his head and face. Thomas claims Brown gave him a concussion and Flannagan of nearly choked him to death. Defendant L. Hills was two feet away and did not intervene.

Thomas estimates the beating lasted between six and eight minutes. Then, "they"—Thomas does not specify who—lifted him into the air and slammed his head into the concrete floor, cracking his eyebrow and impairing his vision in his right eye. Flannagan then jumped on top of Thomas and

choked him. About five minutes later, Thomas was secured in a restraint chair and taken to a nurse, Defendant Michelle Burton.

Burton noted that she saw blood through the spit shield but did not look under the spit shield to assess Thomas's face. Thomas also accuses Defendant Ranese Freal, another nurse, of falsifying unspecified documents and refusing to let Thomas see a doctor at some unspecified time. But Thomas acknowledges he received treatment for a torn rotator cuff from an outside medical provider.

Thomas reports concussion-induced vomiting, a cracked eyebrow, blurred vision in his right eye, extreme back pain, daily migraines, torn rotator cuffs, a cracked collar bone, swollen testicles, blood in his urine, and abdominal pain.

**Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when

4

a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Thomas files his Amended Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Thomas is representing himself in this action. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

5

**Discussion**

The Court construes Thomas's claims as falling under three categories: excessive force, deliberate indifference, and retaliation. The defendants do not move for dismissal of the entire action. Flannagan and Brown do not challenge Thomas's Eighth Amendment claims against them for good reason—they are plausible when construing the factual allegations in Thomas's favor. Nor does Flannagan challenge Thomas's First Amendment retaliation claim. The Court will consider the defendants' challenges to the other claims with the understanding that this action will move forward against Flannagan and Brown.

The Court notes that Thomas and some defendants evoke Florida tort law. § 1983 cannot be used "to convert state tort claims into federal causes of action." *T.W. ex. rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 598 (11th Cir. 2010). The Court will analyze Thomas's claims under federal constitutional law, not Florida tort law.

A. J. Dawson

Thomas does not state any specific factual allegations against Assistant Warden Dawson. Rather, he makes the conclusory allegation that Dawson failed to conduct thorough and complete internal investigations of Thomas's PREA claims, which proximately caused the Eighth and Fourteenth Amendment violations described in the Amended Complaint. Thomas does not

describe the contents of his PREA claims, state how Dawson's investigation was inadequate, or draw a causal connection between Dawson's conduct and the uses of force.

Thomas does not state a claim against Dawson under either theory he invokes. There is no Fourteenth Amendment due process claim for failure to properly investigate a prisoner's claims of abuse because there is no constitutionally protected interest at stake—prisoners are not entitled to internal investigations of their claims of abuse. *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002).

Nor does Thomas state an Eighth Amendment claim against Dawson. The Eighth Amendment's "prohibition of cruel and unusual punishment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To succeed on a failure to protect claim, a plaintiff must show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the prison official was deliberately indifferent to the risk, and (3) the constitutional violation caused his injuries. *Id.* at 1357-58. Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifference, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff."

7

*Wade v. McDade*, --- F.4th ---, ---, 2024 WL 3354963, at *7 (11th Cir. July 10, 2024). A defendant was not deliberately indifferent if he responded reasonably to the risk. *Id.*

Thomas does not plead facts establishing deliberate indifference or causation. While a PREA claim could give a prison official notice of a risk of serious harm, Thomas failed to allege what his PREA documents said. Thus, he "failed to allege that those documents made prison officials subjectively aware of a risk of serious harm." *Cox*, 15 F.4th at 1362. Nor does Thomas allege any facts from which the Court could infer that Dawson responded unreasonably to Thomas's PREA claims. A conclusory allegation that the investigation was inadequate is not enough. Finally, Thomas does not allege fact suggesting a causal connection between Dawson's action or inaction and an injury.

Thomas fails to state a claim plausible claim against Dawson.

   B. L. Hills

Thomas claims Hills was two feet away when Flannagan and Brown punched, kicked, and choked him, and that Hills failed to intervene. "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007). To establish liability, Thomas will need to show that Hills "was in a

position to intervene but failed to do so." *Id.* Given Hills proximity to the alleged excessive force and the length of time the incident lasted, Thomas has stated a plausible failure-to-intervene claim against Hills.

Thomas also accuses Hills of violating his due process rights by refusing to allow him to see Inspector General staff, though he does not provide any additional details. As explained above, Thomas had no right to an investigation. *Vinyard, supra.* So even if Thomas adequately alleged that Hills impeded an investigation, such allegations would not support a due process claim. The Court will dismiss Thomas's due process claim against Hills.

C. A. Bennett

Thomas accuses Bennett of excessive force and deliberate indifference by laying on Thomas's lower body while Flannagan and Brown punched and kicked him.

The core judicial inquiry in an excessive-force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). A prisoner asserting an excessive force claim must establish two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Hudson v.*

9

*McMillian*, 503 U.S. 1, 8 (1992)). A claim satisfies the subjective element if the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." *Id.* The objective component "focuses on whether the official's actions were harmful enough or sufficiently serious to violate the constitution." *Id.* (cleaned up).

The alleged force applied by Bennett does not cross line into excessive-force territory. Thomas merely alleges Bennett restrained him by laying on his lower body. The Supreme Court has said that "not every malevolent touch by a prison guard gives rise to a federal cause of action…An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 37-38 (cleaned up). Thomas does not allege that Bennett injured him by laying on his lower body. However, like Hills, Bennett did not intervene when Flannagan and Brown punched and kicked Thomas while Bennett restrained him. Bennett thus can be liable for failing to intervene. *See Velazquez, supra.* Bennett's inaction could also support a deliberate-indifference claims under the framework laid out in *Farmer, supra*, and *Cox, supra*.

    D. <u>Michelle Burton and Renese Freal</u>

Burton and Freal are nurses, and Thomas sues them both for deliberate indifference. His claims against them are mostly conclusory. Thomas claims Burton did not assess him thoroughly enough after the June 14, 2023 use of

10

force—specifically, he faults Burton for not looking under the spit shield correctional officers had put on Thomas. He alleges Freal falsified medical documents, but he does not identify the documents or the false information Freal recorded. Thomas claims both nurses refused to provide proper medical treatment, but he does not provide further detail. He also acknowledges that he received medical care from an outside specialist.

Thomas's factual allegations against Burton and Freal—taken as true—do not establish deliberate indifference or causation. As explained above, defendants can only be liable for deliberate indifference if they acted with a degree of culpability akin to subjective recklessness under criminal law. Thomas does not allege facts from which the Court can infer that Burton actually and subjectively knew her failure to look under the spit shield created a substantial risk of serious harm. Likewise, Thomas does not plausibly allege Freal knew unspecified falsities in unidentified medical documents created a substantial risk of serious harm. The conclusory claim that they failed to provide adequate care is not enough. The Court cannot infer subjective recklessness based on such vague factual allegations and conclusory assertions. What is more, Thomas does not allege facts showing that Burton or Freal caused any injury. Thomas plausibly alleges he experienced pain, but he does not plausibly allege that Burton or Freal caused or exacerbated that pain. The Court will dismiss Thomas's claims against Burton and Freal

11

Accordingly, it is now

**ORDERED:**

1. Defendants Flannagan, Brown, Dawson, and Hills' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 29) is **GRANTED in part and DENIED in part**. Thomas's claims against Dawson are dismissed, as is his due process claim against Hills.

2. Defendant Bennett's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 32) is **DENIED**.

3. Defendants Ranese Freal and Michelle Burton's Motion to Dismiss (Doc. 42) is **GRANTED**. Thomas's claims against Freal and Burton are **DISMISSED**.

4. The Clerk is **DIRECTED** to terminate Dawson, Freal, and Burton as parties to this case.

5. Flannagan, Brown, Hills, and Bennett must answer the Amended Complaint on or before **August 9, 2024**.

**DONE** and **ORDERED** in Fort Myers, Florida on July 26, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record